UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
TIMOTHY WALSH and JAMES WORDEN,          :
                      Plaintiffs,          :
                               :          **OPINION AND ORDER**
v.          :
                               :          14 CV 1677 (VB)
INTERNATIONAL BROTHERHOOD OF          :
ELECTRICAL WORKERS LOCAL 503,          :
BRIAN SCOTT, SCOTT JENSEN, ROBERT          :
DECKER, BRIAN MCPARTLAND, PATRICK          :
GREAVEN, and MICHAEL HLAVEC, who are          :
individual representatives of International          :
Brotherhood of Electrical Workers Local 503,          :
who participated in the Negotiation of Certain          :
Collective Bargaining Agreements for the          :
Members of International Brotherhood of          :
Electrical Workers Local 503, including          :
Plaintiffs herein,          :
                     Defendants.          :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiffs Timothy Walsh and James Worden bring this action against defendants

International Brotherhood of Electrical Workers Local 503 ("Local 503"), Scott Jensen, Robert

Decker, Brian McPartland, Patrick Greaven, Michael Hlavec, and Brian Scott.[1]   Plaintiffs claim

defendants breached their duty to represent plaintiffs fairly in connection with collective

bargaining agreement ("CBA") negotiations, thereby causing plaintiffs economic harm.

       Before the Court are defendants' motion for summary judgment (Doc. # 102) and

plaintiffs' cross-motion for summary judgment (Doc. # 112).

---

[1]     Plaintiffs initially named Brian Scott as a defendant, but Scott is not mentioned in either
parties' motion for summary judgment or Local Rule 56.1 statements.  Thus, there are no
allegations against Scott.  The Court therefore dismisses this action against Scott for failure to
prosecute pursuant to Fed. R. Civ. P. 41(b).

For the reasons set forth below, defendants' motion is GRANTED and plaintiffs' cross-motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.    Factual Background

The parties have submitted briefs, statements of facts, and declarations with supporting exhibits, which reflect the following factual background.[2]

Local 503 is a labor organization that represents gas and electric utility employees who perform utility work for Orange & Rockland Utilities ("O&R") and GenOn Energy Services, LLC ("GenOn"), and employees who perform telephone work for Frontier Telephone Company ("Frontier") and Alteva Telecommunications ("Alteva").  In 2013, smaller bargaining units represented the subunits of Local 503.  This action pertains to Unit 503.3, which had thirty-six members who were employed by GenOn.  Each subunit, including Unit 503.3, had its own chairperson (who was also a member of the Local 503 Executive Board), vice chairperson, and recorder, and each held its own monthly meetings to address issues particular to the subunit, in

---

[2]    Although plaintiffs submitted a Local Rule 56.1 statement in support of their cross-motion for summary judgment, plaintiffs did not submit a statement in response to defendants' Local Rule 56.1 statement submitted in support of defendants' motion for summary judgment.  See S.D.N.Y. R. Civ. P. 56.1(b) ("papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party"); T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 417–18 (2d Cir. 2009); Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 318 (S.D.N.Y. 2003), aff'd, 88 F. App'x 468 (2d Cir. 2004) ("[W]hile it is permissible for the non-movant to provide a separate statement, apart from [its] paragraph-by-paragraph response, in which it lists other facts it claims to be in dispute, this separate statement is not a substitute for the paragraph-by-paragraph response.") (internal quotation marks omitted).  Because plaintiffs have failed to respond properly to defendants' Rule 56.1 statement, the Court deems as established the facts asserted in defendants' statement.  See S.D.N.Y. R. Civ. P. 5601(c); T.Y. v. New York City Dep't of Educ., 584 F.3d at 418; Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d at 318.

addition to the Local 503 general meeting. Each subunit had a bargaining committee to represent the subunit in CBA negotiations with the respective employers. The Local 503 President and Business Representative were members of each subunit's bargaining committee, along with representatives from the subunit.

Plaintiffs Walsh and Worden, and defendants Jensen, McPartland, Decker, Hlavac, and Greaven are all members of Local 503. Plaintiffs Walsh and Worden and defendants Decker, Greaven, and Hlavac are also members of Unit 503.3 and employees of GenOn at the Bowline Generating Station ("Bowline") in West Haverstraw, New York. Defendant Jensen has been the President, Business Manager, and Financial Secretary of Local 503 since 2012 and has been a member of Local 503 for approximately twenty-nine years. Prior to serving full-time in his Local 503 leadership roles, Jensen was a Lineman First Class HV (High Voltage) for O&R. McPartland has been the Business Representative of Local 503 for eight years and has been a member of Local 503 since 1983, also serving as its Treasurer for about eight years. Prior to serving full-time as Business Representative, McPartland was an Underground Line Chief for O&R.

Plaintiff Walsh, a maintenance mechanic at Bowline, has been a member of Local 503 and a GenOn employee since 1987. Plaintiff Worden works in the warehouse at Bowline and has been a member of Local 503 and a GenOn employee since 1989.

Defendant Decker, an ice technician at Bowline, has been a member of Local 503 for approximately twenty-nine years and has been employed by GenOn and its predecessors since May 1989. Hlavac, an operations technician at Bowline, has been a member of Local 503 and employed by GenOn and its predecessors for thirty-two years. Greaven, an instrumentation

technician at Bowline, has been a member of Local 503 for approximately thirty years and has been employed by GenOn and its predecessors for approximately twenty-eight years.

Other than the ratification meeting on May 7, 2013, plaintiffs Walsh and Worden have not attended Unit 503.3 meetings or Local 503 general meetings for several years, and have never been involved in negotiating a CBA.

The current litigation arises from the negotiation of the CBA between Local 503 and GenOn for the period May 1, 2013, through April 30, 2016 (the "2013 CBA").  Plaintiffs claim defendants breached the duty of fair representation owed to the members of Unit 503.3 by failing to obtain an extension of a pension provision known as the Rule of 85.

Appendix C of the CBA between Local 503 and GenOn for the period June 1, 2008 through April 30, 2013 (the "2008 CBA"), contains various pension plan provisions, including the Rule of 85.  The Rule of 85 provided that "[e]mployees terminating after June 30, 2008 who will attain age 55 on or before December 31, 2013 and will satisfy the Rule of 85 on or before December 31, 2013 shall be grandfathered into the Rule of 85.  Employees must reach age 55 and have years of service and age greater than or equal to 85 by this date to qualify for an unreduced benefit."  (Jensen Decl., Ex. J).

Appendix C of the CBA refers to the Summary Plan Description ("SPD") for a more detailed description of the pension plan and its terms, including the Rule of 85.  The SPD relevant to this litigation is the SPD to Schedule B, GenOn Mirant Bargaining Unit Pension Plan (For New York Employees Hired Before June 1, 2000, and Who Are Covered by a Collective Bargaining Agreement with I.B.E.W. Local 503), July 2012 (the "GenOn SPD").  Pursuant to the GenOn SPD's Early Retirement provision, employees "are eligible to retire and receive a benefit

under the Plan before age 65 if [they] meet the early retirement definition," but the benefit will

be reduced based on a specified formula unless the employee satisfies the Rule of 85.  (Jensen

Decl., Ex. L).  The "Rule of 85 means that the sum of [the employee's] years of Eligibility

Service and [the employee's] age equal or exceed 85."  (Id.).  If the employee "terminate[s] prior

to reaching [his] Early Retirement Date (i.e., prior to reaching age 55 with 10 years of

Accredited Service), [the employee] will not satisfy the Rule of 85."  (Id.).  A "Grandfathered

Participant" is an employee who will have both attained age 55 and satisfied the Rule of 85 on or

before December 31, 2013.  (Id.).

The 2008 CBA was scheduled to expire on April 30, 2013.  A bargaining committee,

which included Local 503 President Jensen, Local 503 Business Representative McPartland,

Unit 503.3 Chairman Decker, Unit 503.3 Vice Chairman Hlavac, and Unit 503.3 Reporter

Greaven, was organized to negotiate a new CBA with GenOn (the "Unit 503.3 Bargaining

Committee").

Prior to negotiations, the Unit 503.3 Bargaining Committee held a strategy meeting

during which the Bargaining Committee drafted a list of bargaining proposals, based in part on

questionnaires from the Unit 503.3 membership indicating the importance of each bargaining

issue.  The Bargaining Committee was aware the members of Unit 503.3 considered the Rule of

85 to be an important part of their contract.

Prior to bargaining, Local 503 and GenOn discussed ground rules for the negotiations,

which Decker drafted (the "Ground Rules").  The Ground Rules provided in part that "all current

contract language that is unchanged would remain unchanged in the next agreement, unless it

contained a sunset clause."  (Jensen Aff. ¶ 10, Ex. M).

5

GenOn's negotiators were the Director of Human Resources and Labor Relations from GenOn's parent company, NRG Energy, Inc. ("NRG"), Vince Pepenelli; NRG Labor Relations Specialist, Kim Pavolka; GenOn Human Resources Manager at Bowline, Donna Pizzo; and Bowline Manager, Bill Metzger.

The negotiations took place during approximately six bargaining sessions, each of which lasted approximately eight to twelve hours, except the last bargaining session which lasted approximately twenty-four hours. At the first bargaining session, the Unit 503.3 Bargaining Committee and GenOn simultaneously exchanged written proposals. Jensen and McPartland negotiated on behalf of the Unit 503.3 Bargaining Committee. Decker, Hlavac, and Greaven were in the bargaining room during each session and participated in the Unit 503.3 Bargaining Committee caucuses. Jensen and McPartland occasionally had discussions with the GenOn negotiators in the hallway outside the bargaining room.

The final bargaining session lasted from 10:00 a.m. on April 30, 2013, until 10:00 a.m. on May 1, 2013. On the morning of May 1, 2013, after caucusing with the Bargaining Committee, Jensen and McPartland met with Pepenelli and Metzger in the hallway outside the bargaining room. Jensen proposed a three percent raise for three years, a three year extension of the CBA, changes to medical benefits, and that all dates in the agreement "move forward." (Jensen Aff. ¶ 12; McPartland Aff. ¶ 12). Jensen specifically used the phrase "move all dates forward" when he proposed the offer to Pepenelli and Metzger. (Jensen Aff. ¶ 12; McPartland Aff. ¶ 12). Pepenelli and Metzger responded, "Deal," and the four individuals shook hands. (Jensen Aff. ¶ 12; McPartland Aff. ¶ 12).

When Jensen and McPartland returned to the bargaining room, they informed the other members of the Unit 503.3 Bargaining Committee that Pepenelli and Metzger accepted the deal, including the agreement to move all dates forward.  Hlavac asked McPartland whether they still had the Rule of 85 and McPartland responded they did.  (Hlavac Aff. ¶ 6).

Based on the representation that GenOn had agreed to "move all dates forward," each member of the Unit 503.3 Bargaining Committee believed that each date in the CBA would move forward three years (to 2016) to reflect the three-year extension of the contract, including the date for the Rule of 85.

Pepenelli returned to the bargaining room with copies of the Memorandum of Understanding ("MOU").  The MOU stated, "The terms set forth in this document represent the settlement of all wages and benefits issues arising during the collective bargaining process.  All provisions of the collective bargaining agreement not expressly modified herein shall remain unchanged."  (McPartland Aff., Ex. D).  The members of the Unit 503.3 Bargaining Committee read and signed the MOU.  Members of the Unit 503.3 Bargaining Committee believed the MOU memorializing the three-year extension of the contract meant the Rule of 85 would also be extended by three years.

On May 7, 2013, Unit 503.3 held a ratification meeting.  At the meeting, Decker explained the wage increase, the changes to the medical plan, and that GenOn was going to change all the dates in the CBA to reflect the extension of the contract, which meant that the Rule of 85 would be extended through the new contract.  Copies of the MOU were distributed to the members at the ratification meeting, which plaintiffs read.  The Unit 503.3 membership

ratified the agreement by a vote of twenty-six to three.  Plaintiffs claim they would not have

voted to ratify the new contract if they knew the Rule of 85 was not extended.

Decker prepared Local 503's version of the revised contract while GenOn simultaneously

prepared its own version.  Decker revised the wages in Appendix A, and the dates in the

Preamble, Article 7 (which pertained to the wages of certain members that had been frozen), and

Appendix C (which includes the Rule of 85) to reflect the three-year extension of the contract.

On May 8, 2013, Pavolka sent Decker GenOn's version of the revised contract, which did

not revise the frozen wages in Article 7 or the date for the Rule of 85 in Appendix C.

On May 10, 2013, Decker emailed Pizzo to inform Pizzo that Pavolka failed to revise the

dates in Appendix C and to advise that the date for the Rule of 85 needed to be changed from

December 31, 2013 to December 31, 2016, to reflect the three-year extension of the contract.  On

May 13, 2013, Pizzo responded by email explaining that according to GenOn, the Rule of 85 was

a "stand-alone provision of the contract that would not automatically renew," and that the Rule

of 85 was to be interpreted as written.  (Decker Aff., Ex. T).

On several occasions in May 2013, Jensen and Decker communicated with Metzger and

Pepenelli about extending the Rule of 85, but their efforts were unsuccessful.  In the middle of

May 2013, Metzger and Pepenelli called Decker at his home.  Decker told Metzger and Pepenelli

that not extending the Rule of 85 was a mistake that needed to be corrected.  According to

Decker, Metzger and Pepenelli told him that "GenOn was not willing to spend one dime on [Unit

503.3], that they were saving money," and that there was not enough value in Unit 503.3's contract to give up to cover the cost of the Rule of 85.[3]  (Decker Aff. ¶ 17).

The Unit 503.3 Bargaining Committee refused to sign the CBA without the Rule of 85 extension.  GenOn then filed an unfair labor practice charge against Local 503 at the National Labor Relations Board ("NLRB") for failing to execute the contract.

After conducting an investigation but before filing a formal complaint, the NLRB indicated it was inclined to issue a complaint against Local 503 regarding the refusal to sign the CBA as drafted by GenOn, and urged the parties to settle the case.  Given the NLRB's position, and because the other benefits that had been agreed on—such as wage increases—would not go into effect until an entire agreement was reached, Local 503 agreed to try to resolve the NLRB proceedings by resuming negotiations with GenOn.  The Unit 503.3 Bargaining Committee and GenOn eventually signed another MOU on August 27, 2013, that did not extend the Rule of 85.

Because the second MOU did not extend the cut-off date for the Rule of 85 from December 31, 2013, to December 31, 2016, Bargaining Committee members Decker, Hlavac, and Greaven lost their ability to retire early with an unreduced benefit.[4]  Plaintiffs Walsh and

---

[3]    Plaintiffs contend defendants' statements regarding what GenOn's representatives may have said are inadmissible hearsay.  (Pl.'s Br. at 9).  The Court disagrees.  Decker's testimony regarding Metzger and Pepenelli's statements to him with respect to GenOn's position is admissible for purposes of demonstrating the effect such statements had on Decker—i.e., to show why it was reasonable for Decker to believe further negotiations with GenOn regarding the Rule of 85 would have been futile.  See Fed. R. Evidence 801(c) (hearsay is "a statement . . . a party offers in evidence to prove the truth of the matter asserted in the statement"); United States v. Dupree, 706 F.3d 131, 136 (2d Cir. 2013) ("a statement offered to show its effect on the listener is not hearsay").

[4]    Decker's date of birth is June 1, 1958, and his hire date is February 1, 1987.  Decker would be 58 years old and thus would have attained the age of 55 before December 31, 2016.  Decker would have accumulated 87 points (58 years of age plus 29 years of service) before December 31, 2016.  Hlavac's date of birth is June 25, 1960, and his date of hire is March 2,

Worden, however, would not have qualified to exercise the Rule of 85 even if the qualification

date had moved forward from December 31, 2013, to December 31, 2016.[5]

II.    Procedural History

On January 23, 2014, plaintiffs filed their initial complaint in New York State Supreme

Court in Orange County, and defendants removed the case to federal court on March 11, 2014.

(Doc. #1).  On April 3, 2014, plaintiffs moved to remand the action to state court (Doc. #8), and

on October 7, 2014, the Court denied plaintiffs' motion (Doc. # 16).  On November 21, 2014,

plaintiffs filed an amended complaint and after an initial conference, plaintiffs filed a second

amended complaint ("SAC") on December 5, 2014.  (Doc. #26).

On December 24, 2014, defendants moved to dismiss the SAC on statute of limitations

grounds and for failure to state a claim.  (Doc. #30).  On August 13, 2015, the Court dismissed

---

1984.  Hlavac would be 56 years old and thus would have attained the age of 55 before
December 31, 2016.  Hlavac would have accumulated 88 points (56 years of age plus 32 years of
service) before December 31, 2016.  Greaven's date of birth is September 19, 1958, and his date
of hire is August 13, 1986.  Greaven would have accumulated 88 points (58 years of age plus 30
years of service) before December 31, 2016.  Pursuant to the GenOn SPD, Decker, Hlavac, and
Greaven would have met all the requirements of the Rule of 85 before the cut-off date of
December 31, 2016, and thus would have been entitled to retire early with an unreduced pension
benefit.  By December 31, 2013, however, neither Decker, Hlavac, nor Greaven would have
attained sufficient points under the GenOn SPD to retire early with unreduced pension benefits.

[5]      Walsh's date of birth is April 15, 1962, and his hire date is June 24, 1987.  Walsh would
have been 54 years old and thus would not have attained the age of 55 before December 31,
2016.  Furthermore, Walsh would have accrued only 83 points (54 years of age plus 29 years of
service) before December 31, 2016.  Worden's date of birth is August 19, 1962, and his date of
hire is March 13, 1989.  Worden would have been 54 years old and thus would not have attained
the age of 55 before December 31, 2016.  Worden would have accumulated only 81 points (54
years of age plus 27 years of service) before December 31, 2016.  Because neither Walsh nor
Worden would have met the requirements of the Rule of 85 before the cut-off date of December
31, 2016, they would not have been entitled to retire early with an unreduced pension benefit.

plaintiffs' claims based on the 2008 CBA as time-barred, but did not dismiss plaintiffs' breach of duty of fair representation claim based on the 2013 CBA.  (Doc. #52).

On September 11, 2015, defendants answered.  (Doc. #56).

## DISCUSSION

I.    <u>Summary Judgment Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>id</u>.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of her case on which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to

11

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."
Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The
mere existence of a scintilla of evidence in support of the non-moving party's position is
likewise insufficient; there must be evidence on which the jury could reasonably find for him.
Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws
all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v.
CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a
reasonable inference could be drawn in favor of the non-moving party on the issue on which
summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v.
Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider admissible
evidence.  Nora Bevs., Inc. v. Perrier Grp. Of Am. Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Breach of Duty of Fair Representation Claim

"When a labor organization has been selected as the exclusive representative of the
employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the [National
Labor Relations Act] as the exclusive representative of the employees in the unit, to represent all
members fairly."  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998).  Plaintiffs claim
defendants' failure to confirm that the MOU reflected the terms they understood the agreement
to be was so arbitrary that it amounts to a breach of their duty of fair representation.

The Court disagrees and concludes defendants are entitled to summary judgement.

12

"[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith."  Marquez v. Screen Actors Guild, Inc., 525 U.S. at 44.  This duty applies to all union activity, including contract negotiation. Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991).

Here, plaintiffs contend defendants breached the duty of fair representation by engaging in arbitrary conduct.  Thus the Court does not consider whether the defendants' conduct was discriminatory or in bad faith.

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. at 67.  A court's review of union actions "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."  Id. at 78.  To be arbitrary, a union's conduct must be "without a rational basis or explanation."  Marquez v. Screen Actors Guild, Inc., 525 U.S. at 46.  "Moreover, tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010).

Applying these standards here, the Court concludes, as a matter of law, that defendants did not breach their duty of fair representation.  At most, plaintiffs' claims might support a finding that defendants acted negligently, but not that they acted arbitrarily.  Based on the particular "factual landscape" at the time defendants signed the MOU, no reasonable finder of fact could conclude that defendants' failure to ensure the Rule of 85 was extended in the 2013

13

CBA through December 31, 2016, was "so far outside a wide range of reasonableness as to be irrational."  See Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. at 67.

On the morning of May 1, 2013, defendants Jensen and McPartland and GenOn representatives Pepenelli and Metzger came to an agreement on a deal that would extend all dates under the CBA.  The defendants' belief that this agreement did in fact extend all dates under the CBA—including the Rule of 85 cut-off date—was based on a rational explanation.

The Ground Rules for the negotiations, which Local 503 and GenOn discussed prior to negotiating, provided that "all current contract language that is unchanged would remain unchanged in the next agreement, unless it contained a sunset clause."  (Jensen Aff. ¶ 10, Ex. M). The cut-off date in the Rule of 85 is one such "sunset clause," which defendants understood meant that if no revisions to the Rule of 85 were negotiated, then the existing language would remain unchanged, except for the cut-off date.  Defendants understood this to mean the December 31, 2013, cut-off date would be extended to December 31, 2016.  This interpretation cannot be said to be without a rational basis in light of the fact that Pepenelli and Metzger explicitly agreed to "move all dates forward."  The agreement to "move all dates forward" was rationally understood to include all dates in the CBA, not just the CBA's expiration date.  Each defendant understood the phrase "all dates" to mean all the dates in the CBA, including the Rule of 85, and thus believed the Rule of 85 would be extended through the next CBA.  Moreover, each defendant believed the MOU's three year extension of the contract captured the agreement to extend all the dates in the CBA forward by three years.

It was not until after the MOU was ratified on May 7, 2013, that GenOn's conflicting interpretation of the agreement to "move all dates forward" became apparent.  Decker (and

14

subsequently Jensen and McPartland) did not learn that GenOn considered the Rule of 85 cut-off date to be a "stand-alone provision" that required independent negotiation separate from the rest of the contract until they received Pizzo's email dated May 13, 2013.  (Decker Aff., Ex. T). According to each defendant, Pizzo's May 13, 2013, email is the first time the concept of a "stand-alone provision" requiring independent negotiation was mentioned.  (Jensen Aff. ¶ 15; McPartland ¶ 12; Decker Aff. ¶ 15; Hlavac Aff. ¶ 6; Greaven Aff. ¶ 6).  Following this revelation, Jensen and Decker endeavored to resolve the misunderstanding with Pepenelli and Metzger, but Pepenelli and Metzger were unyielding.  Pepenelli and Metzger ultimately told Decker that Unit 503.3 was "not worth a dime" to GenOn, and that there was nothing Unit 503.3 could give up in order to induce GenOn to extend the Rule of 85 cut-off date with the rest of the contract.  (Decker Aff. ¶ 17).

Defendants were so determined to extend the Rule of 85 that they refused to sign the revised CBA prepared by GenOn, and GenOn filed a complaint against them at the NLRB. Defendants did not begin to renegotiate with GenOn until the NLRB indicated it would be more advantageous for Local 503 to settle the dispute with GenOn through continued negotiation rather than an NLRB proceeding.  In light of the NLRB's position, it was reasonable for defendants to attempt to negotiate an extension to the Rule of 85 outside of NLRB proceedings.

By August 2013, it was apparent to defendants they were not likely to succeed in negotiating with GenOn regarding extending the Rule of 85.  Moreover, it was reasonable for defendants to agree eventually to the new CBA, which did not extend the Rule of 85, so that Unit 503.3 members could benefit from the other agreed terms, including wage increases.

The reasonableness of the failure to extend the cut-off date for the Rule of 85 is underscored by the fact that other bargaining units of Local 503 have received similar demands from employers to reduce costs of pension benefits and future liabilities.  See, e.g., Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d at 710 (concluding a union's actions that resulted in reduced retirement benefits did not breach the union's duty of fair representation in light of the economic conditions the employer was facing).  By 2006, the pension provisions had been removed from the Alteva CBA and replaced with an enhanced 401(k), the Frontier CBA no longer had a pension provision, and Frontier had frozen the pensions of some longtime members. In 2008, GenOn and Alteva negotiated retiree medical benefits out of their CBAs for any employee that had not yet retired.  Retirement benefits have also been reduced for Local 503's largest bargaining unit (the 600 members employed by O&R), including by imposing a new cost share on retirees (which has subsequently increased), an increase in the service requirement to qualify for retiree medical benefits, a transition from a defined benefit plan to a defined contribution plan, an increase in the retirement age, and an increase in the benefit reduction for members who retire early.

Given the "wide latitude" union representatives have in performing their bargaining responsibilities, and the "wide range of reasonableness" afforded to union representatives' conduct, defendants were not arbitrary in their signing of the MOU in May 2013 or in their eventual accession to the 2013 CBA in August of that year.  See, e.g., Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d at 710–12 (no breach of duty of fair representation even though union mistakenly failed to audit the employer's benefit plan, which led to the termination of the benefit plan); White v. White Rose Food, 237 F.3d 174, 176 (2d Cir. 2001) (union leadership's decision

16

to negotiate and execute an amendment fell "well within the wide range of reasonableness afforded unions" even though it clarified the meaning of a term in the underlying agreement in a way that reduced the value of the agreement for the union) (internal quotation marks omitted).

For the foregoing reasons, no reasonable juror could conclude defendants acted arbitrarily—that is, without a rational basis—when they mistakenly believed the extension of the Rule of 85 was part of the MOU and when they subsequently agreed in August 2013 to sign the 2013 CBA.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.

Plaintiffs' cross-motion for summary judgment is DENIED.

The Clerk is instructed to terminate the motions (Doc. ##102, 112) and close this case.

Dated: February 6, 2017
     White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge